UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-23279-CIV-ALTONAGA/Reid

JOSEPH FIGAS,

    Plaintiff,
v.

PRINCESS CRUISE LINES, LTD.,

    Defendant.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendant, Princess Cruise Lines, Ltd.'s Motion to Dismiss Counts III and IV of Plaintiff's Complaint [ECF No. 6], filed on August 18, 2025. Plaintiff, Joseph Figas filed a Response [ECF No. 17]; to which Defendant filed a Reply [ECF No. 18]. The Court has reviewed the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted.

**I. BACKGROUND**

This negligence action arises from the death of Cathryne Anne Figas ("Mrs. Figas"), who suffered a stroke during a cruise aboard the *Emerald Princess* — a vessel owned, operated, and controlled by Defendant. (*See* Compl. [ECF No. 1] ¶¶ 4–5, 11–12, 16, 29–31, 38). Plaintiff brings this action as personal representative of Mrs. Figas's estate. (*See id.* ¶ 1).

Defendant markets its cruises, including the *Emerald Princess*, as "family friendly vacations with extensive offerings and activities for people of all ages, abilities, and financial stature." (*Id.* ¶ 13). Consistent with that representation, the *Emerald Princess* has a medical center, and passengers are charged a customary fee for onboard medical services. (*See id.* ¶¶ 15–16). Defendant also maintains a shoreside Fleet Medical Operations division at its corporate headquarters to work alongside the onboard medical center "in the event of [a] shipboard medical

emergency requiring immediate evacuation." (*Id.* ¶ 17 (alteration added)).  A structured emergency response team on each of Defendant's vessels runs monthly practice drills to ensure passengers are provided "timely and appropriate medical care[,] including [during] emergency evacuations." (*Id.* ¶ 18 (alterations added)).

Defendant advertised its medical center, medical staffing, and shipboard care as follows:

> Our medical centers are primarily intended to provide acute care for illness and accidents that may occur while on vacation and are not intended to provide long term care for patients with chronic illnesses or as a substitute for regular health care.
>
> Our intention is to:
>
> - Provide quality maritime medical care for guests and crew members aboard our ships.
> - Initiate appropriate stabilization, diagnostic and therapeutic maneuvers for critically ill or medically unstable patients.
> - Support, comfort and care for patients onboard.
> - Facilitate the timely medical evacuation of patients, if appropriate.
>
> All of our onboard medical facilities meet or exceed the standards established by the American College of Emergency Physicians. Our onboard medical facilities are staffed by full-time registered doctors and nurses. In addition to twice-daily office hours, they are available 24 hours a day in the event of an emergency.

(*Id.* ¶ 22).

Despite this messaging, Defendant allegedly improperly treated, mismanaged, and failed to timely evacuate Mrs. Figas to facilitate "timely and appropriate shoreside emergency medical care. (*Id.* ¶ 27; *see also id.* ¶¶ 29–38).  Mrs. Figas and her family relied on Defendant's representations — namely, its available shipboard medical facility, qualified nurses and physicians, and ability to medically evacuate patients — in deciding to sail aboard the *Emerald Princess*.  (*See id.* ¶ 28).

On July 25, 2024, Mrs. Figas was taken to the ship's medical center in a wheelchair after reporting sudden onset dizziness, headache, and vomiting.  (*See id.* ¶ 29).  She was diagnosed with

a urinary tract infection and an intracranial hemorrhage. (*See id.* ¶ 30). After remaining in the ship's medical center overnight, Mrs. Figas was released the next morning and returned to her room in a wheelchair. (*See id.* ¶¶ 30–31). Shortly after entering in her stateroom, Mrs. Figas collapsed in the bathroom and became unconscious. (*See id.* ¶ 31).

Mrs. Figas was taken back to the ship's medical center and remained on board until she was disembarked in Bar Harbor, Maine and taken to Mount Desert Island Hospital — around 39 hours after first reporting to Defendant's medical center. (*See id.* ¶¶ 31, 34). Mount Desert Island Hospital determined Mrs. Figas was in critical condition, and she was life-flighted to Maine Medical Center in Portland, Maine. (*See id.* ¶ 35). A CT scan of Mrs. Figas's head revealed a "diffuse subarachnoid hemorrhage, intraventricular hemorrhage, and developing hydrocephalus[,]" and the Maine Medical Center's team performed an emergency pipeline embolization. (*Id.* ¶ 36 (alteration added)). Three days later, Mrs. Figas underwent a second stent-assisted coil embolization. (*See id.* ¶ 37).

Plaintiff implies that Mrs. Figas passed away because of the delayed treatment of her hemorrhagic stroke. (*See id.* ¶ 5). Based on these facts, Plaintiff asserts four claims against Defendant: vicarious liability for negligence of medical staff (Actual Agency/Respondeat Superior) ("Count I"); vicarious liability for negligence of medical staff (Apparent Agency/Respondeat Superior) ("Count II"); vicarious liability for negligence of non-medical personnel (Actual Agency/Respondeat Superior) ("Count III"); and direct liability for negligence (including negligent hiring) ("Count IV"). (*See id.* ¶¶ 46–95).

Defendant moves to dismiss Counts III and IV for failure to state claims for relief. (*See* Mot. 1–2).[1] In the Response, Plaintiff concedes that Count IV is a shotgun pleading because it

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

"commingles a negligence cause of action with a negligent hiring cause of action" and advises he "will amend Count IV accordingly." (Resp. 7). As a result, the Court only evaluates the sufficiency of Count III.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court must construe the complaint "in a light most favorable to the plaintiff" and take its factual allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

## III.  DISCUSSION

In Count III, Plaintiff alleges that "Defendant, through the negligence of its non-medical personnel, breached its duty to exercise reasonable care." (Compl. ¶ 88).  Plaintiff lists nine ways Defendant was vicariously negligent, each example predicated on Defendant's "fail[ure] to create and/or follow policies and procedures." (*Id.*).  Defendant argues Count III should be dismissed because (1) Plaintiff does not plead the required elements of vicarious liability; (2) Plaintiff impermissibly commingles direct liability allegations in his vicarious liability claim, rendering Count III a shotgun pleading; and (3) Plaintiff is alleging an inapplicable negligent-mode-of-operation theory.  (*See* Mot. 5–9).

Defendant first argues that Plaintiff fails to plead a claim for vicarious liability as a matter of law because Count III contains no factual allegations regarding any duty breached by a crewmember or any allegations regarding crewmember misconduct relating to Plaintiff's damages. (*See* Mot. 5–7; Reply 1–2).  According to Plaintiff, he has sufficiently identified the crewmembers who are liable by alleging their job titles and how they breached their duties.  (*See* Resp. 3–5). Upon review, the Court agrees with Defendant.

"[V]icarious liability allows an otherwise non-faulty employer to be held liable for the negligent acts of [an] employee acting within the scope of employment." *Yusko v. NCL (Bah.), Ltd.*, 4 F.4th 1164, 1169 (11th Cir. 2021) (alterations added, quotation marks and citation omitted). To allege negligence, Plaintiff must show "(1) the tortfeasor had a duty to protect [Plaintiff] from a particular injury, (2) the tortfeasor breached that duty, (3) the breach actually and proximately caused [Plaintiff's] injury, and (4) [Plaintiff] suffered actual harm." *Id.* at 1167–68 (alterations added; citation omitted).

The Court agrees — and Defendant does not contest, that Plaintiff need not identify individual crewmembers by name; still, Plaintiff must do more than identify broad "categories of personnel." (Resp. 3; *see also* Compl. ¶ 87 (identifying crewmembers as Defendant's "non-medical personnel, including its officers, directors, employees, agents, servants, shipboard personnel . . . both on board . . . and located at Defendant's shore-side offices" (alterations added)). The three cases Plaintiff cites in his Response bolster this conclusion. *See McLean v. Carnival Corp.*, No. 22-23187-Civ, 2023 WL 372061, at *3 (S.D. Fla. 2023) (identifying employees who misaligned the gangway of the ship); *Green v. Carnival Corp.*, 614 F. Supp. 3d 1257 (S.D. Fla. 2022) (identifying a crewmember who failed to warn the plaintiff of a dangerous slip and fall condition); *Hunter v. Carnival Corp.*, 609 F. Supp. 3d 1305, 1310 (S.D. Fla. 2022) (identifying a cabin steward who negligently set up the plaintiff's cabin).

Even if Plaintiff adequately alleged specific individuals employed by Defendant as the tortfeasors, Count III does not plead those individuals' negligent acts or omissions. Defendant's duty and conduct as the shipowner are not relevant under a theory of vicarious liability. *See Yusko*, 4 F.4th at 1169 ("[T]he scope of a shipowner's duty has nothing to do with vicarious liability which is not based on the shipowner's conduct."). Plaintiff alleges *Defendant*, not its non-medical personnel, owed its passengers a duty; and he argues that Defendant's breach of its duty caused Plaintiff's damages — rather than specifically pleading how Defendant's *non-medical personnel* breached a duty and how their breaches caused Plaintiff's damages. (*See* Compl. ¶ 88).

Defendant next argues that Count III is a shotgun pleading because Plaintiff pleads direct liability allegations under a vicarious liability claim. (*See* Mot. 7). Defendant also contends that Plaintiff is alleging an inapplicable negligent-mode-of-operation theory. (*See id.* 8–9). Plaintiff does not respond to Defendant's second and third arguments. (*See generally* Resp.). "[T]he

Eleventh Circuit has made clear that failure by a plaintiff to respond to a motion to dismiss argument constitutes an abandonment of that claim." *Collins v. BAC Home Loans*, No. 12-cv-3721, 2013 WL 2249123, at *6 (N.D. Ala. May 21, 2013) (alteration added) (citing *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000)). In any event, the Court agrees with Defendant that Count III is a shotgun pleading and improperly seeks to hold Defendant liable for negligent modes of operation — a theory "foreclosed by Eleventh Circuit precedent." *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1297 (S.D. Fla. 2021) (citation and footnote call number omitted).

There are four types of shotgun pleadings. *See Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). Defendant argues Count III is the third type of shotgun pleading: "one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* 1323. Count III is titled "Vicarious Liability[,]" but Count III's underlying allegations describe Defendant's direct negligence. (Compl. 19 (alteration added); *see also id.* ¶¶ 86–90). A claim for direct liability must be brought in a separate count. *See Liles v. Carnival Corp. & PLC*, No. 22-cv-22977, 2023 WL 34644, at *3 (S.D. Fla. Jan. 4, 2023) (citing *Gharfeh v. Carnival Corp.*, No. 17-20499-Civ, 2018 WL 501270, at *6 (S.D. Fla. Jan. 22, 2018)). Even if Count III was not a shotgun pleading, it still must be dismissed because Plaintiff asserts an inapplicable negligent-mode-of-operation theory.

This case involves torts "committed aboard a ship sailing in navigable waters," thus, federal admiralty law controls. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959)). Plaintiff concedes the Court has admiralty subject matter jurisdiction under 28 U.S.C. section 1333. (*See* Compl. ¶ 7).

The Florida Supreme Court has explained that the basis for a negligent-mode-of-operation theory is "the claim that the specific mode of operation selected by the premises owner or operator resulted in the creation of a dangerous or unsafe condition." *Cacciamani v. Target Corp.*, 622 F. App'x 800, 804 (11th Cir. 2015) (quoting *Markowitz v. Helen Homes of Kendall Corp.*, 826 So. 2d 256, 260 (Fla. 2002)). The theory "looks to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident." *Id.* (citation and quotation marks omitted). The Eleventh Circuit has emphasized that this theory of negligence is "at odds with admiralty law's requirement that a cruise ship must have notice of the dangerous condition." *Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 910 (11th Cir. 2017) ("No court has ever held that [a negligent-mode-of-operation] claim exists in federal admiralty law." (alteration added; footnote call number omitted)).

Defendant insists that although Plaintiff titled Count III "Vicarious Liability," its allegations all attempt to hold Defendant "directly responsible for Plaintiff's damages based on its policies and procedures, or alleged lack thereof." (Mot. 8). Defendant is correct on this point. Courts in this Circuit have found "allegations describing a failure to create or follow adequate policies and procedures do not relate to the specific circumstances of a plaintiff's injury and are instead allegations of negligent mode of operation not recognized in the Eleventh Circuit." *Nowak v. Carnival Corp.*, No. 24-24316-Civ, 2025 WL 57525, at *3 (S.D. Fla. Jan. 9, 2025) (collecting cases).

The same principle applies to the allegations underlying Count III. Because Plaintiff contends Defendant's policies and procedures, or lack thereof, caused the damages, his vicarious liability claim is an impermissible negligent-mode-of-operation claim. (*See* Compl. ¶ 88).

8

CASE NO. 25-23279-CIV-ALTONAGA/Reid

## IV. CONCLUSION

For these reasons, it is

**ORDERED AND ADJUDGED** that Defendant, Princess Cruise Lines, Ltd.'s Motion to Dismiss Counts III and IV of Plaintiff's Complaint **[ECF No. 6]** is **GRANTED**. Counts III and IV of Plaintiff's Complaint **[ECF No. 1]** are **DISMISSED without prejudice**.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of September, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record